# In the United States Court of Federal Claims

No. 23-0688

(Filed under seal: July 12, 2023)

(Reissued for Publication: August 16, 2023)[1]

```
*************************************
ROTAIR AEROSPACE CORPORATION,    *
                                 *
                Plaintiff,       *
                                 *
        v.                       *
                                 *    Pre-Award Bid Protest; Motion to
THE UNITED STATES,               *    Supplement; Sole Source Procurement;
                                 *    Bad Faith; Improper Behavior
                Defendant,       *
                                 *
        and                      *
                                 *
THE BOEING COMPANY,              *
                                 *
                Defendant-Intervenor.    *
*************************************
```

*James M. White*, Marshall & White, PC, Washington, DC, counsel for Plaintiff.

*Michael D. Snyder*, U.S. Department of Justice, Civil Division, Washington, DC, counsel for Defendant.

*Noah B. Bleicher*, Jenner & Block LLP, Washington, DC, counsel for Defendant-Intervenor. With whom were *Moshe B. Broder*, and *Andrew L. Balland*, of counsel.

## MEMORANDUM OPINION AND ORDER

**DIETZ, Judge.**

Before the Court is a motion filed by Rotair Aerospace Corporation ("Rotair") seeking to supplement the administrative record filed by the government in connection with Rotair's pre-award bid protest. Rotair seeks to supplement the record with prior contracts and specifications relating to the manufacture of the arm assembly for the Apache military helicopter as part of its challenge to a decision by the Defense Logistics Agency ("DLA") to procure the arm assembly from The Boeing Company ("Boeing") in a sole source procurement. Because the Court finds

---

[1] This Opinion and Order was filed under seal on July 12, 2023, *see* [ECF 33], in accordance with the Protective Order entered on May 18, 2023. *See* [ECF 9]. The parties were given an opportunity to identify protected information, including source selection, propriety information, and confidential information, for redaction. The parties filed a joint status report on August 10, 2023, wherein they indicated that no redactions were necessary. [ECF 40].

that these materials are not necessary for the Court to perform effective judicial review of Rotair's claims, Rotair's motion is **DENIED**.

## I. BACKGROUND

Rotair is a veteran owned small business in Bridgeport, Connecticut specializing in the manufacture and supply of rotary aircraft products. First Am. Compl. [ECF 25] ¶ 51; Rotair Aerospace Corporation (Jul. 11, 2023), https://www.rotair.com. In April 2011, Rotair was confirmed by the Department of the Army ("Army") as an approved source for the arm assembly. AR 329.[2] Rotair subsequently manufactured and delivered several hundred arm assembly units to the Army. [ECF 25] ¶ 25. In 2014, without notifying Rotair, the Army removed it from the approved sources list, purportedly after Boeing asserted proprietary data rights over certain updated specifications for the arm assembly. *Id.* ¶¶ 45, 47.

The DLA issued a solicitation for the arm assembly on March 8, 2022. AR 276. The solicitation indicated that the procurement would be sole sourced to Boeing, as the only approved source for the arm assembly. AR 276-77. After reviewing the solicitation and determining that it was not listed as an approved source, Rotair emailed the Contracting Officer ("CO") to explain that it was previously approved as a source of the arm assembly by the US Army Aviation and Missile Command ("AMCOM") System Readiness Directorate ("SRD"), Sustainment Division ("SD"), and that its exclusion from the approved source list was a mistake. AR 328. On April 4, 2022, the CO responded to Rotair, stating that "the [AMCOM SRD SD] is the sole authority to determine all approved sources" and that "the technical data package (dated 4 February 2022) does not list Rotair [] [as] an approved source for the manufacture of the [a]rm [a]ssembly." AR 327. The CO encouraged Rotair to seek source approval. *Id.*

Rotair filed its first protest with the Government Accountability Office ("GAO") on July 1, 2022. AR 1038. However, this protest was dismissed after the DLA indicated its intention to cancel the solicitation and address the concerns raised by Rotair. AR 1049. Shortly thereafter, Rotair received a letter stating that it was formally removed from the list of approved sources for the arm assembly. AR 1090. The letter further stated:

> The [SRD] has been notified that the latest technical data available to the Army for the part listed in Table 1 have been marked proprietary by the Original Equipment manufacturer. Therefore, Rotair . . . cannot be allowed to bid on future solicitations because the Government cannot distribute a complete technical data package.

*Id.* On September 12, 2022, the DLA issued a sources sought pre-solicitation notice that bundled a requirement for the arm assembly (a non-critical safety component) with a requirement for a bell crank (a critical safety component). AR 28. Upon learning of the pre-solicitation notice and troubled by what it considered to be an improperly bundled procurement, Rotair contacted the CO to inquire whether the arm assembly requirement from the prior solicitation was included in the pre-solicitation notice. AR 33. In response, the CO informed Rotair that the prior solicitation was canceled in its entirety and that the pre-solicitation notice reflected a new requirement with

---

[2] The Court cites to the Administrative Record filed by the government at [ECF 18] as "AR ___."

new requisitions and new technical data packages. *Id.* Unsatisfied with the DLA's handling of its concerns, Rotair filed a second GAO protest. AR 259. Rotair's second protest was subsequently dismissed as untimely. AR 1366.

On May 9, 2023, Rotair filed the instant protest in this Court alleging that the DLA and the Army improperly removed Rotair from the approved sources list for arm assembly and that they are "unreasonably and unlawfully preventing [Rotair] from competing [for] the current award by not reinstating [Rotair] as an approved source." [ECF 25] ¶ 2. Rotair also alleges that the DLA arbitrarily determined that no source other than Boeing could compete under the solicitation based on a mistaken assumption that Boeing has proprietary data rights to the arm assembly specifications that prevent the DLA from sharing the specifications with other sources. *Id.* ¶ 3. Boeing filed an unopposed motion to intervene on May 11, 2023, which the Court granted. [ECFs 4, 8]. On May 24, 2023, the government produced the administrative record. [ECF 18]. After a status conference held on June 7, 2023, to discuss the contents of the administrative record, Rotair filed the instant motion to supplement the administrative record. [ECF 26].[3] The motion is fully briefed, and the Court has determined that a hearing is not necessary for its resolution.

## II.    LEGAL STANDARD

This Court reviews agency decisions in bid protests using the standard of review set forth in the Administrative Procedure Act ("APA"). 28 U.S.C. § 1491(b)(4); *Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1332 (Fed. Cir. 2001). This standard permits a court to set aside an agency's contracting decision if the protestor shows it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A) (2018); *Bannum, Inc. v. United States*, 404 F.3d 1346, 1351 (Fed. Cir. 2005). "As a general rule, in determining whether an agency's actions are arbitrary or irrational, the 'focal point for judicial review . . . should be the administrative record already in existence, not some new record made initially by the reviewing court.'" *Knowledge Connections, Inc. v. United States,* 79 Fed. Cl. 750, 759 (2007) (quoting *Florida Power & Light Co. v. Lorion,* 470 U.S. 729, 743 (1985)). Thus, "[t]he task of the reviewing court is to apply the appropriate APA standard of review to the agency decision based on the record the agency presents to the reviewing court." *Fla. Power & Light Co.,* 470 U.S. at 743–44. The purpose of limiting review to the record actually before the agency is to guard against courts using new evidence to "convert the 'arbitrary and capricious' standard into effectively de novo review." *Murakami v. United States,* 46 Fed. Cl. 731, 735 (2000), *aff'd,* 398 F.3d 1342 (Fed. Cir. 2005). Accordingly, a party's "ability to supplement the administrative record is limited." *Axiom Res. Mgmt., Inc. v. United States,* 564 F.3d 1374, 1379 (Fed. Cir. 2009).

While the focal point for judicial review of an agency's decision is the administrative record already in existence, the Court does not apply an iron-clad rule that automatically limits

---

[3] Rotair's motion is titled "Plaintiff's Motion to Compel Production of Documents and Supplement the Administrative Record." [ECF 26] at 1. Rotair states that its motion is made pursuant to Rule 37 of the Rules of the United States Court of Federal Claims ("RCFC"), Failure to Make Disclosures or to Cooperate in Discovery. *Id.* at 4. However, in substance, Rotair's motion seeks to require the government to supplement the administrative record with extra-record evidence. *See id.* at 5-10. Therefore, the Court treats Rotair's motion as a motion to supplement the administrative record, not as a motion to compel under RCFC 37.

its review to the four corners of the agency-assembled record. *See GraphicData, LLC v. United States*, 37 Fed. Cl. 771, 779 (1997). A motion to supplement the administrative record "seeks to add materials that the agency did not consider but should be considered to permit a proper evaluation of the agency's decision." *Poplar Point RBBR, LLC v. United States*, 145 Fed. Cl. 489, 494 (2019). The Federal Circuit has instructed that, in bid protest cases, "supplementation of the record should be limited to cases in which 'the omission of extra-record evidence precludes effective judicial review.'" *Axiom Res. Mgmt, Inc.*, 564 F.3d at 1380 (quoting *Murakami*, 46 Fed. Cl. at 735 (2000)). "The party seeking to supplement the administrative record bears the burden of demonstrating why the existing record is insufficient." *Price Gordon Servs. v. United States*, 139 Fed. Cl. 27, 50 (2018).

## III.    DISCUSSION

In its motion, Rotair seeks to supplement the administrative record with "[d]ocuments pertaining to the original contract under which the Apache specifications relating to the [a]rm [a]ssembly were developed, including subsequent contracts, as well as documents related to funding of the same[,]"and "Apache AH-64 [a]rm [a]ssembly specifications documents and materials." [ECF 26] at 5, 8.[4] In Rotair's view, it was improperly removed from the list of approved sources due to the DLA's mistaken belief that it was unable to share the complete technical data package necessary to manufacture the arm assembly because the specifications contain Boeing's proprietary markings. *Id* at 7. Rotair argues that the Apache was developed using public funding, and therefore, the government retains unlimited data rights to the specifications for its spare parts unless there is a material change in the form, fit, or function of the subject assembly. *Id.* Thus, it contends that supplementation of the record with the prior contracts and related documentation, as well as the specifications, is necessary for the Court to determine whether the DLA arbitrarily concluded that it lacks the necessary data rights in the relevant specifications, improperly removed Rotair from the list of approved sources, and limited the competition to Boeing. *Id.* at 7-9.

Having considered Rotair's arguments, the Court finds that the materials requested by Rotair are not necessary for effective judicial review of its claims. The proper inquiry before the Court is whether the DLA's procurement procedures and resultant decisions were "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A) (2018); *Bannum, Inc.*, 404 F.3d at 1351. Among other information, the record contains the DLA's Justification and Approval ("J&A") for using a sole source procurement to meet its requirements. AR 35-38. The J&A explains that the reason for the sole-source procurement is because "[t]he rights to use the data needed to purchase this part from additional source(s) are not owned by the Government and cannot be purchased, developed, or otherwise obtained." AR 36. The record also contains a Memorandum from the Army recommending that only the latest specifications for the arm assembly and bell crank, marked as proprietary by Boeing, be used for manufacture of the products. AR 729-30 ("AED concurs with TL recommendation to use the new Boeing Specification HP9-1 revision L;" "AED concurs with TL recommendation to use new revision M;" "AED does NOT concur with TL reviewer. Recommend use of new spec revision AP."). Based on this information and other information in the existing record, the Court will be able to effectively assess whether the DLA provided a

---

[4] All page numbers in the parties' briefings refer to the page numbers generated by the CM/ECF system.

rational basis for its procurement decisions and whether the DLA's procurement procedures violated procurement laws and regulations. While it is true that the sought-after materials may shed light on which party possesses the data rights in the relevant specifications, this is not the proper inquiry before the Court. For the limited purpose of reviewing the DLA's procurement actions, the existing administrative record is sufficient.

In its reply[5], Rotair alleges bad faith and improper behavior on the part of the DLA and the Army in an attempt to show that supplementation of the administrative record is warranted. [ECF 32] at 4 (stating that "a separate basis for supplementing the administrative record exists when evidence of 'bad faith' or 'improper behavior' by the Government is provided"). Rotair is correct that the Court "may supplement the administrative record where there is 'a strong showing of bad faith or improper behavior' by agency officials." *L3 Commc'ns Integrated Sys., L.P. v. United States,* 91 Fed. Cl. 347, 354 (2010). However, to warrant supplementation of the record, allegations of bad faith or improper behavior must be based on hard facts. *Id.* at 356. They cannot "rest merely on counsel's argument, suspicion, or conjecture." *Pitney Bowes Gov't Sols., Inc. v. United States,* 93 Fed. Cl. 327, 332 (2010).

Rotair's allegations of bad faith and improper behavior are insufficient to warrant supplementation of the record. Rotair states that the government "is refusing to disclose the specifications not because it believes it lacks the rights, but very likely because it believes Boeing will take legal action against it if it does assert its rights." [ECF 32] at 7. Rotair also points to the Army's failure to promptly notify it of its removal from the approved sources list as required by Federal Acquisition Regulation 9.207(b) and argues that "the Government *admits* it was aware of its notification obligations but specifically chose not to do so. In other words, its actions were deliberate." [ECF 32] at 4 (emphasis in original). Despite Rotair's attempts to frame the government's motivations for removing Rotair as an approved source and proceeding with a sole source procurement as improper or in bad faith, Rotair fails to allege any hard facts to support its allegations. Consequently, Rotair's allegations of bad faith and improper behavior are speculative and insufficient to warrant supplementation of the record.

## IV.    CONCLUSION

For the reasons stated above, Rotair's motion to supplement the administrative record [ECF 26] is **DENIED**. Rotair's motion for leave to file a combined reply [ECF 31] is **GRANTED**.

**IT IS SO ORDERED.**

s/ Thompson M. Dietz
THOMPSON M. DIETZ, Judge

---

[5] Rotair filed a Motion Requesting Leave to Submit a Combined Reply on July 7, 2023. [ECF 31]. In its motion, Rotair explains that its reply to the government's response was due by July 7, 2023; however, its reply to Boeing's response was due by July 5, 2023. *Id.* at 1. Rotair also states that it contacted counsel for the government and Boeing to request that Rotair be permitted to file a combined reply on July 7, 2023, and that Boeing counsel requested that Rotair seek the Court's leave to file the reply and government counsel indicated that it would defer to the Court's decision as to whether to grant leave. *Id.* Considering the nature of this litigation and the agreed upon briefing schedule, the Court concludes that it is appropriate to permit Rotair to file its combined reply, and, accordingly, the Court grants Rotair's motion for leave.